**Fried, Frank, Harris, Shriver & Jacobson LLP**

One New York Plaza
New York, New York 10004
Tel: +1.212.859.8000
Fax: +1.212.859.4000
www.friedfrank.com



Direct Line: 212.859.8592
Email: steven.witzel@friedfrank.com

January 27, 2017

**By ECF**

The Honorable Alison J. Nathan
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

**Re:**     *United States v. Burrell, et al. (Richard Montague)*
            **S2 15 Cr. 95 (AJN)**

Dear Judge Nathan:

I was appointed through the CJA to represent Richard Montague, and respectfully submit this sentencing submission on his behalf. Richard has been incarcerated since his arrest on September 1, 2016 and is scheduled to be sentenced by this Court on February 3, 2017. For the reasons set forth below, we respectfully request that this Court impose a non-Guidelines sentence of time served, or just over five months.

On October 19, 2016, Richard pleaded guilty to participating in a conspiracy to distribute marijuana in violation of 21 U.S.C. § 841(b)(1)(C), pursuant to a plea agreement. *See* Plea Agreement, dated Oct. 13, 2016, Ex. A.[1] Under the Plea Agreement, Richard faces a United States Sentencing Guidelines (the "Guidelines") range of eighteen to twenty-four months' imprisonment. *See id.* While recommending a sentence of 18 months' imprisonment, the Probation Department has noted that a below-Guidelines sentence may be appropriate here pursuant to section 3553(a), due to Richard's youth, his minor criminal history and his "loving, strong family, who wish to support his positive attributes." PSR at ¶ 88.[2] For those reasons and the reasons set forth below, we respectfully submit that a sentence of time served is sufficient and just.

---

[1]     Citations to "Ex." refer to the exhibits attached to the Declaration of Andrew B. Cashmore, dated January 27, 2017, and filed with this submission.

[2]     References to the "PSR" are to Richard's Presentence Investigation report, as prepared by Amber Wilton, U.S.P.O., on January 9, 2017.

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Alison                                                                              Page 2
January 27, 2017

## BACKGROUND

Richard, who turned 22 at the beginning of September, was born and raised in the Bronx, New York. His father drives a delivery truck and his mother is a nurse in an elderly care home. Richard's parents provided a loving and supportive family for Richard and his siblings. He remains close with his family, particularly his brothers Duane and Nicholas. Duane is a social worker, and Nicholas owns a tow truck service.

Richard attended PS 21 and MS 113 before starting high school at Louis Brandeis High School. He knows some of the co-defendants in this case from school, and from his neighborhood. After one year at Brandeis, Richard transferred to Satellite Academy High School in Manhattan and graduated in 2011. While he was studying at Satellite Academy, Richard explored a variety of extracurricular activities, including playing basketball and being part of the school's film study club. After graduating from high school, Richard attended Fulton-Montgomery Community College outside of Albany for a year, studying business management. His whole family was proud of him, and his mother was relieved that he had left the dangers and problems of their Bronx neighborhood. Unfortunately, Richard did not pass some of his courses and as such did not complete enough credits to move beyond the first year at Fulton-Montgomery, so he returned to the Bronx. Richard then earned his tow truck license, and has been working with his brother Nicholas's tow truck business at various times over the past few years.

Richard also met his girlfriend, Acura Gardiner, when he moved back to the Bronx after college. Acura works at a hotel in Manhattan. Richard and Acura quickly became close. Acura had been diagnosed with breast cancer in 2014. Prior to meeting Richard, she had undergone three months of chemotherapy, and has since been in remission. In February 2016 Acura required a double mastectomy, which was followed by breast reconstruction surgery in June 2016. This situation was, of course, very stressful to the couple and, not knowing how long her recovery from the June 2016 surgery would take, Acura decided to take her children to stay with her family in Louisiana while she recuperated. In April 2016, Richard drove Acura and her children all the way to Louisiana, stopping to visit a waterpark in Texas on the way. Richard stayed in Texas and Louisiana with Acura and her family until the end of May, when the couple returned to New York. Acura underwent surgery shortly afterward, and Richard helped her through her recovery until he was arrested in this case.

Acura's diagnosis heavily impacted Richard, and he began using marijuana more frequently as a coping mechanism. Richard had sold marijuana on occasion as early as 2013, but he began to sell marijuana more frequently as a means of supporting his habit. Although Richard has accepted responsibility for participating in a conspiracy to distribute 50 kilograms of marijuana, Richard himself was personally responsible for a smaller amount.

Richard recognizes the harm that drugs bring to the community and in no way intends to understate the seriousness of the charges against him. It should be recognized, though, that the

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Alison                                                                            Page 3
January 27, 2017

charges leveled against Richard are monumentally different, and dramatically less serious, than the charges that most of his co-defendants are facing.  Indeed, Richard had far less involvement in the conspiracy, and in the conduct underlying this case, than most of his co-defendants. Unlike many of his co-defendants, Richard is not accused of having been a member of any gang; was responsible for selling only marijuana, and not crack cocaine or any other drugs; and was not accused of selling any drugs at or near the "Forts," the area near White Plains Road and 224th Street where many gang members and affiliates sold drugs.  The Court should consider Richard's relative culpability in the overall criminal conduct charged when fashioning an appropriate sentence for Richard.

Richard has been incarcerated at the Metropolitan Correctional Center ("MCC") in New York City since his arrest on September 1, 2016.  During that time, Richard has been a model inmate.  He quickly accepted responsibility for his actions in this case, and on October 19, 2016 pleaded guilty before Your Honor.

Recognizing his potential for rehabilitation and need for assistance, Richard applied on November 17, 2016 to the Southern District of New York's Young Adult Opportunity Program (the "YAOP").  Richard had hoped to benefit from the guidance offered by the judges who mentor the YAOP participants, and hoped to continue working with his brother and possibly continue his education at the same time.  Richard was unfortunately not admitted to the YAOP, for which only a limited number of spots were available, and was duly advised on December 19, 2016.  Nevertheless, his application demonstrates his commitment to reforming his behavior and his acceptance of responsibility.[3]

Richard was charged with sixty-three co-defendants in this case, many of whom are facing much more serious charges than he is.  Five of Richard's co-defendants have already been sentenced.  Robert Feliciano was sentenced to 48 months' imprisonment on November 21, 2016. Bradley Wilson was sentenced to 24 months' imprisonment on December 16, 2016.  Rushaun Brown was sentenced to 36 month' imprisonment on January 5, 2017.  Daquan Reid was sentenced to 36 months' imprisonment on January 6, 2017.  Dante Plummer was sentenced to 24 months' imprisonment on January 18, 2017.  As explained more fully below, even though each of those defendants were charged with more serious crimes than Richard—such as selling crack cocaine at the Forts or possessing a loaded firearm—each received a sentence well below his respective Guidelines range.

---

[3]        *See* Ex. B

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Alison                                                                                          Page 4
January 27, 2017

## Analysis of Section 3553(a) Factors

While the Guidelines should serve as a "starting point and . . . initial benchmark," *Gall v. U.S.*, 552 U.S. 38, 49 (2007), a sentencing court must consider all of the factors identified in 18 U.S.C. § 3553(a) when determining a sentence that is "'sufficient, but not greater than necessary' to fulfill the purposes of sentencing." *U.S. v. Cavera*, 550 F.3d 180, 189 (2d. Cir. 2008) (en banc) (quoting 18 U.S.C § 3553(a)); *see U.S. v. Jones*, 249 F. App'x 207, 208-09 (2d Cir. 2006) ("While *Booker* [543 U.S. 220 (2005)] excised from the Sentencing Reform Act those provisions that made the [Sentencing] Guidelines mandatory, it left in place the mandate for consideration of § 3553(a) factors in the imposition of sentences."). Specifically, this Court is required to consider, *inter alia*: the nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of the sentence imposed; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a).

**I.      Section 3553(a)(1): Richard Montague's History and Characteristics and the Nature and Circumstances of the Offense**

  **A.      Richard's History and Characteristics**

    *1.      Richard's Family Background*

Richard is a "family oriented" young man who "tries his best to keep his family close."[4] He is the "heart" of his family, which has had a positive influence on him.[5] Richard's parents provided a loving home for him and his brothers. While living with them, Richard "made [his family] proud by graduating high school and going to college."[6] That relationship with his family continues to this day, and has grown to include his brothers' families. Richard has been a "pillar of security for all his nieces," and a loving uncle to his nephews.[7]

Richard's relationship with his family members is best evidenced by the support that they have given him through this difficult time for the 22-year-old, who has been overwhelmed by prison. As Richard's cousin has stated, his arrest has been difficult, not only for his immediate family and nieces and nephew, "but [also for] his grandmother, [] aunties and uncle."[8] Richard's family recognizes that he has "strayed off the path that [they] had hoped for him," but they continue to stand by his side;[9] he has been surrounded by his parents, his girlfriend, his brothers,

---

[4]  Ex. C.

[5]  Ex. D.

[6]  Ex. E. Most of Richard's family, including his brother Nicholas, spells their last name as "Montaque." Richard has previously used both spellings of his last name, but has been referred to in this case exclusively as "Montague."

[7]  Ex. D.

[8]  Ex. C.

[9]  Ex. F.

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Alison                                                                                     Page 5
January 27, 2017

his aunts and his cousins at each of his court appearances.  Richard's family recognizes the
seriousness and the impact of his conduct, but intends to help him succeed in changing his
behavior and succeed in life.  After completing his sentence, Richard intends to return home,
where he will be in a caring environment that will positively reinforce his rehabilitation.

Richard's kind nature is evident in his relationship with his girlfriend Acura.  As
described in detail above, when Acura needed serious cancer-related surgery, Richard
volunteered to drive her and her children across the country so that they could be with family
during Acura's surgery, and he could help her focus on recovering.  After dropping the children
off in Louisiana, Richard drove Acura back to New York for her surgery, and helped her
throughout her recovery.

Richard immensely regrets the pain that he has caused his parents, Acura, and the rest of
his family from his involvement in this matter.

### 2.   Richard's Education and Employment Record

In addition to the factors enumerated in 18 U.S.C. § 3553(a), this Court may also
consider "any and all information that reasonably might bear on the proper sentence for the
particular defendant" given the crime committed, including the factors listed in section 5H of the
Guidelines (such as employment).  *U.S. v. Juwa*, 508 F.3d 694, 700 (2d Cir. 2007) (quoting
*Wasman v. U.S.*, 468 U.S. 559, 563 (1984)).

Richard was a successful high school student who graduated and was accepted to college.
Growing up in a rough neighborhood, he largely stayed out of trouble.  In addition to his regular
coursework, he was engaged in numerous extracurricular activities, which illustrate his wide
range of interests.  After graduating from Satellite Academy in 2011, Richard studied business
management at Fulton-Montgomery.  Although Richard left Fulton-Montgomery after his first
year, he demonstrated a desire to learn and do well for himself.

After returning home from school, Richard earned his tow truck license so he could assist
his brother, Nicholas, with his tow truck company.[10]  As Nicholas described, following his
sentence, Richard intends to "complete his degree, join [Nicholas] in the towing business and
turn his life around for the better."[11]

---

[10]   As noted in the PSR, Richard's tow trick license expired on October 31, 2016, while he was incarcerated.
*See* PSR at ¶ 61.  Richard intends to renew his license and continue working with his brother upon his
release from prison.

[11]   Ex. E.

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Alison                                                                                        Page 6
January 27, 2017

> ### 3.      *Richard Has Accepted Responsibility*

When Richard pleaded guilty on October 19, 2016, he accepted responsibility for his crime and enabled the Government and this Court to conserve resources.  His guilty plea saved the Government from the necessity of producing evidence to substantiate its allegations against Richard.  The Government would have also had to locate and prepare numerous witnesses.  As noted above, Richard swiftly acknowledged the wrongfulness of his conduct and took responsibility.

Richard deeply regrets the poor decisions that he made and is acutely aware of their consequences.  He confronts daily the guilt of knowing that his poor decisions have caused stress for his family and for Acura.  Richard is cognizant of, and holds himself fully responsible for, the consequences that his family must now bear as a result of his crime.

> ### 4.      *Richard's Criminal History is Minor*

On November 10, 2014, when he was 20 years old, Richard was arrested for marijuana possession.  The charges were dismissed as a result of an adjournment in contemplation of dismissal (ACD).  On April 30, 2015, Richard was arrested for operating a dirt bike in the street near his home in the Bronx.  After taking responsibility for his conduct, Richard pleaded guilty to disorderly conduct and was sentenced to a conditional discharge.  On March 12, 2016, Richard was arrested on state charges connected to the charges in this case.  Those charges were dismissed by the Bronx District Attorney's Office after he was arrested in this case.

While Richard recognizes that he is responsible for his own actions, it is important to emphasize that Richard's run-ins have usually involved other young men from his neighborhood. Several of these young men are Richard's co-defendants in the current case, and most are facing much more serious charges than he is.  Richard regrets that he started to get caught up in what some of his co-defendants were doing, and fervently wishes for a chance to turn himself around and get back on the right path.

## B.      The Nature and Circumstances of the Instant Offense

The instant offense, which is described in more detail in paragraphs 10-19 of the PSR, involves an investigation into the conduct of two rival street gangs, the Big Money Bosses ("BMB") and the 2Fly YGz, that were operating in the Bronx, New York.  The immediate case focuses on BMB.

The PSR's account of BMB's conduct is harrowing.  Between 2007 and 2016, BMB members were involved in a number of violent activities, along with narcotics trafficking and financial offenses.  BMB members regularly sold drugs, including crack cocaine and prescription pills, out in the open in their neighborhood, and specifically at and around the Forts.  BMB members also engaged in acts of violence.  Their victims include Sadie Mitchell, a 92-year-old

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Alison                                                                    Page 7
January 27, 2017

woman who was killed in her home by a stray bullet, and Jeffrey Delmore, a 15-year-old boy
who was stabbed to death.

Richard is not and never has been a member of either gang; nor does the Government
contend otherwise.  He did sell drugs in connection with BMB members who he knew from the
neighborhood, but he was a minor dealer. Unlike many of his co-defendants, Richard sold only
marijuana, and not crack cocaine or prescription pills.  Moreover, while Richard pleaded guilty
to conspiring to distribute a large amount of marijuana, there is no evidence that he was directly
responsible for selling any large quantity, and indeed suggests that he was involved in the
conspiracy only for short, scattered periods.  The evidence in this case is telling.  That evidence
includes dozens of hours of wiretapped recordings and surveillance, and contains numerous
examples of Richard's co-defendants discussing narcotics.  Richard, on the other hand, is a
participant on only a handful of those calls.  Indeed, nearly all the evidence referenced in the
PSR that is used to show that Richard was engaged in narcotics-related calls took place between
August 28 and September 3, 2015.  *See* PSR at ¶ 20-21.  There is also a reference to a call that
took place on November 1, 2015.  *See* PSR at ¶ 21.  But that call does not reference drugs in any
way.  Moreover, Richard was not on the call and the only reference to Richard is to confirm that
he was present with one of the callers.

Richard in no way intends to downplay the seriousness of the offense to which he has
pled guilty.  However, it is important to recognize Richard's relative culpability within the
offense.  Richard was charged as a co-defendant with violent and dangerous members of BMB,
as well as individuals who regularly sold crack cocaine and other drugs.  Richard's conduct
should not be conflated with theirs.  The Government shares this view.  At his sentencing
hearing, the government described Rushaun Brown, one of Richard's co-defendants, as "about as
low level in the case as it gets," even though Mr. Brown "did not merely sell marijuana," but
instead "sold crack cocaine, which is a much more dangerous drug."[12]  But Richard is even
"lower" in the case than Mr. Brown, as Richard sold only marijuana.  Indeed, the Government
acknowledged at Bradley Wilson's sentencing hearing that marijuana dealers would be "lower
level" than crack cocaine dealers, as "it's hard to dispute that crack is a more serious drug."[13]
While any drug conspiracy is dangerous and harmful to a community, the Court should consider
in sentencing Richard that his role in the conspiracy was substantially less serious than many of
his co-defendants'.

It is also significant that Richard's role in the offense was non-violent.  Based on the
legislative history of section 3553(a)(1), Congress defined the "'nature' of the offense" to
include "the amount of harm done by the offense, whether a weapon was carried or used, . . . and
whether there were any particular aggravating or mitigating circumstances surrounding the
offense."  *U.S. v. Williams*, 443 F.3d 35, 48 (2d Cir. 2006) (citing S. Rep. No. 98-225, at 75
(1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3258).  Although many of Richard's co-
defendants are alleged to have committed violent acts, there have been no allegations whatsoever
of violence on Richard's part.

---

[12]    Ex. G (Rushaun Brown sentencing transcript) at 11:15-25.
[13]    Ex. H (Bradley Wilson transcript) at 19:10-16.

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Alison                                                                          Page 8
January 27, 2017

## II.   Section 3553(a)(2): The Purposes of the Sentence Imposed

The entire analysis under section 3553(a) must be conducted pursuant to the requirement that the court "impose a sentence sufficient, *but not greater than necessary* to comply with the purposes set forth in section 3553(a)(2).  18 U.S.C. § 3553(a) (emphasis added).  The purposes set forth in section 3553(a)(2) include the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).  To impose a sentence that is sufficient but not greater than necessary, Your Honor should take into account the mitigating factors described above as well as those detailed below.

### A.   Section 3553(a)(2)(A): Just Punishment

A sentence of time served will provide just punishment.  At sentencing, Richard will have spent just over five months incarcerated at MCC.  Even a relatively stern sentence of one year and one day should translate to a sentence of approximately 311 days with the good time behavior reduction of 54 days.  *See* 18 U.S.C. § 3624(b).  Richard has displayed exemplary conduct in prison, and even a theoretical sentence of 311 days, or approximately ten months, might be further reduced if the Bureau of Prisons were to release Richard earlier, and/or to a half-way house.

Richard is not a habitual criminal, which, as Your Honor noted at Mr. Wilson's sentencing, is "significant" and "is in contrast with many others who have been charged here."[14] As described above and in the PSR, Richard has been arrested for a few minor, non-violent crimes.  *See* PSR at ¶¶ 38, 42-43.  He has never been accused of having engaged in any crime of violence, including in this case, and has never been accused of a firearms offense.

---

[14]      Ex. H (Bradley Wilson transcript) at 24:19-25:1.

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Alison                                                                          Page 9
January 27, 2017

Richard does not need to spend any more time in prison.  A sentence of time served would appropriately adhere to the Department of Justice's policy of "strik[ing] the best balance between protecting public safety and addressing the overcrowding of our prison system that has been exacerbated by unnecessarily long sentences."  Press Release, Department of Justice, Justice Department Urges U.S. Sentencing Commission to Make Certain Individuals Incarcerated for Drug Offenses Retroactively Eligible for Reduced Sentences (June 10, 2014), *available at* http://www.justice.gov/opa/pr/justice-department-urges-us-sentencing-commission-make-certain-individuals-incarcerated-drug; *see also* Memorandum from the Attorney General to the United States Attorneys and Assistant Attorney General for the Criminal Division (August 12, 2013), *available at* https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/ag-memo-department-policypon-charging-mandatory-minimum-sentences-recidivist-enhancements-in-certain-drugcases.pdf (memorandum instructing federal prosecutors not to charge low-level, nonviolent drugs offenders who have no significant ties to gangs with offenses that carry severe mandatory sentences).

## B.    Section 3553(a)(2)(B) & (C): Deterrence

Given Richard's limited role in the instant offense, a sentence of time served is more than sufficient to send a strong message to other would-be criminals about the consequences of even modest marijuana sales.  The sentence will also deter Richard: Richard's time at MCC has been difficult for him, as he has never before been incarcerated and he left his girlfriend recovering from major surgery.

We respectfully submit that our requested time served sentence comports with a just sentence under the facts and circumstances here.  Richard is well aware of the anguish he has caused his family, and has not been able to help Acura as she continues to recover from surgery. Richard has responded to his arrest by being a model inmate, accepting responsibility for his wrongful conduct, and doing his best to focus on serving his sentence so he can move on with his life.

## III.    <u>Section 3553(a)(6): His Co-Defendants' Sentences Support a Sentence of Time Served for Richard</u>

Five of Richard's co-defendants, Robert Feliciano, Bradley Wilson, Rushaun Brown, Daquan Reid, and Dante Plummer have already been sentenced in this matter.  As the Government's submissions for these men made clear, all five were more culpable than Richard.

**Robert Feliciano,** who Your Honor determined was not a member of BMB, was a "mid-level dealer" who regularly sold crack cocaine at the Forts.  Indeed, Mr. Feliciano was arrested multiple times at the Forts on drug charges.  Mr. Feliciano has prior felony convictions for committing violent offenses, including beating a victim unconscious in the Bronx in 2014.  Mr. Feliciano's Guidelines range was 78-97 months, and the Court sentenced him on November 21, 2016 to a below-Guidelines sentence of 48 months.

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Alison                                                                                          Page 10
January 27, 2017

     **Bradley Wilson** regularly sold crack cocaine at the Forts.  Mr. Wilson was arrested at the Forts with twenty-two bags of crack packaged for distribution.  Mr. Wilson faced a Guidelines range of 70-87 months, and the Court sentenced him on December 16, 2016 to a below-Guidelines sentence of 24 months.

     **Rushaun Brown** sold a large amount of crack cocaine with BMB members, often at the Forts.  Indeed, Mr. Brown was previously arrested at the Forts for trying to sell drugs to an undercover police officer.  Mr. Brown faced a Guidelines range of 63-78 months, and the Court sentenced him on January 5, 2017 to a below-Guidelines sentence of 36 months.

     **Daquan Reid**, who the Government characterized as a "mid-level dealer," was responsible for selling a large amount of crack cocaine.  While he was not a member of BMB, he did possess a firearm while carrying out the offense.  Mr. Reid faced a Guidelines range of 87-108 months, and the Court sentenced him on January 6, 2017 to a below-Guidelines sentence of 36 months.

     **Dante Plummer** committed multiple crimes with BMB members.  These included $150,000 of bank fraud with 10 victims, drug offenses, and possessing a loaded firearm.  Mr. Plummer faced a Guidelines range of 27-33 months, and the Court sentenced him on January 18, 2017 to a below-Guidelines sentence of 24 months.

     Messrs. Feliciano, Wilson, Brown, Reid, and Plummer have received sentences that are mostly well below their Guidelines range.[15]  In determining these sentences, Your Honor has recognized that each defendant's "relative culpability" is a material factor for consideration.[16] Richard is significantly less culpable than either Mr. Feliciano, Mr. Wilson, Mr. Brown, Mr. Reid, or Mr. Plummer.  Richard is not alleged to have been a member of BMB; Richard did not sell crack cocaine; Richard never sold drugs at the Forts; Richard never used or even possessed a firearm; Richard never defrauded anybody; and Richard has never been accused, much less convicted, of committing a violent crime.  Given his co-defendants' sentences, a below-Guidelines sentence of time served would be sufficient, and not greater than necessary, to punish Richard.

     It is also worth noting that none of the defendants that have been sentenced to date were found to be members of BMB.  The co-defendants that are accused to be members of the gang, many of whom are charged with heinous crimes, are awaiting trial or sentencing.  Richard's relative culpability is by any measure far less serious than these co-defendants.  But even within the category of those co-defendants who were not accused or found to be members of BMB,

---

[15]     Indeed, aside from Mr. Plummer, all of these men were given a sentence that was approximately half of the lower end of their Guidelines range.

[16]     Ex. I (Robert Feliciano sentencing transcript) at 7:19-8:11; Ex. H (Bradley Wilson sentencing transcript) at 19:24-20:13 ("I do think it's important . . . to understand relative culpability as a factor in the 3553(a) context"); Ex. J (Daquan Reid sentencing transcript) at 8:20-9:9 ("Let me also just ask . . . so that I can understand relative culpability among the defendants . . . the government's understanding as to Mr. Reid's role and how that compares with others in the case generally or those who have been sentenced already.").

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Alison                                                          Page 11
January 27, 2017

including all of Richard's co-defendants who have been sentenced so far, Richard was far less culpable.

As Your Honor knows, there were additional circumstances in Messrs. Feliciano's, Wilson's, Brown's, Reid's, and Plummer's lives that warranted their below Guidelines sentences.  The same is true for Richard.  A below guidelines sentence of time served would be appropriate in this case.

*           *           *

For the reasons set forth above, we respectfully ask Your Honor to sentence Richard to a below-Guidelines sentence of time served.


Respectfully submitted,

/s/ Steven M. Witzel
Steven M. Witzel
Jennifer L. Colyer
Andrew B. Cashmore


cc:     Rachel Maimin, AUSA